**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| TERRENCE BOWSER, | Case No. 2:20-cv-01301-RFB-BNW |
| Petitioner, | **ORDER** |
| v. | |
| JERRY HOWELL,[1] *et al.*, | |
| Respondents. | |

**I.    SUMMARY**

Before the Court is Petitioner Terrence Bowser's *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. This matter is before the Court for adjudication on the merits of the petition's sole ground for relief.

Mr. Bowser alleges the state trial court's imposition of increased sentences for two discharging-a-firearm offenses following his successful appeal and retrial constitutes vindictive sentencing in violation of due process under the Fourteenth Amendment. See ECF No. 1 at 3. He contends a presumption of vindictiveness is applicable because the sentencing judge failed to provide reasons for imposing longer sentences than were imposed by the original sentencing judge, and failed to explain why, unlike in the original sentence, the court imposed a consecutive sentence for one of the discharging-a-firearm offenses. See id. Mr. Bowser claims the trial court's failure to provide reasons justifying increased sentences renders the sentences presumptively vindictive in violation of his rights to due process under the Fourteenth Amendment, and he requests remand with instructions to modify his sentence to comport with the sentences originally imposed for those convictions. See id. For the reasons discussed below, the petition is granted on this basis.

---

[1] Mr. Bowser initiated this habeas proceeding while he was incarcerated. See ECF No. 1. The state corrections department's website indicates that he was released on parole on September 18, 2022. See *NDOC Inmate Search*, NEV. DEP'T CORRS., https://ofdsearch.doc.nv.gov/ (last visited Jan. 20, 2026).

## II.    BACKGROUND

### A.  Summary of the Offenses[2]

On January 31, 2005, officers from the Las Vegas Metropolitan Police Department responded to reports of a shooting and car crashing into a property wall, involving a male victim. The victim was identified as John McCoy. A female witness reported that Mr. McCoy stated that he had been shot twice and identified the car involved as a Lincoln Continental. Mr. McCoy died from a shotgun wound.

Shortly after, a North Las Vegas Police Department officer observed a Lincoln Continental with its headlights off, occupied by two men. The officer attempted to stop the Lincoln, but the driver attempted to evade capture before eventually stopping in a driveway. When the driver tried to back out of the driveway, the officer drew his weapon and commanded the driver stop. The driver, identified as Mr. Bowser, and the passenger, Jamar R. Green, were then taken into custody. An empty pistol grip pump action shotgun was found near the driveway and spent shotgun cases, as well as a box of shotgun shells, were discovered inside the vehicle.

When police first attempted to question Mr. Bowser, he stated, "I'm fucked. I'll talk to my lawyer to see what he can get me," and refused to make any statements. Mr. Green initially denied having a gun but later admitted to discarding it. Mr. Green confessed that he and Mr. Bowser discussed shooting a car and that he, Green, fired at McCoy's vehicle. At the detention center, Mr. Bowser said the shooting was the result of road rage but subsequently admitted that was not the case; rather, he said that it was the result of a joke about shooting a vehicle and the pair's decision to go cruising. Mr. Bowser stated that he had been drinking, and that Mr. Green had the recovered shotgun in his lap as they drove around. Mr. Bowser admitted that he then instructed Green to shoot McCoy's vehicle.

### B.  First Trial and Sentencing

On October 11, 2007, a capital jury convicted Mr. Bowser of six counts related to the death of John McCoy: (1) conspiracy to commit murder; (2) first-degree murder with use of a deadly weapon; (3) conspiracy to discharge a firearm out of a motor vehicle; (4) discharging a firearm out

---

[2] The summary of the offenses is derived from the Presentence Investigative Report (PIR).

of a motor vehicle; (5) conspiracy to discharge a firearm at or into a motor vehicle; and (6) discharging a firearm at or into a motor vehicle. Following penalty hearings, the jury determined mitigating circumstances outweighed the aggravating circumstances and entered a special verdict imposing a sentence of 40 years to life for the conviction for first-degree murder with use of a deadly weapon.

The trial court imposed an aggregate sentence of 40 years to life based on concurrent sentences of imprisonment for (1) two to ten years for conspiracy to commit murder; (2) 40 years to life for first-degree murder with use of a deadly weapon; (3) one year for conspiracy to discharge a firearm out of a motor vehicle; (4) two to five years for discharge of a firearm out of a motor vehicle; (5) one year for conspiracy to discharge a firearm at or into a motor vehicle; and (6) one to five years for discharging a firearm at or into a motor vehicle.

### C.  Remand for New Trial

The Nevada Supreme Court ("NSC") then reversed Bowser's convictions and remanded for a new trial based on juror misconduct. This was occasioned by the court bailiff's actions in the jury room during deliberations, wherein he demonstrated shotgun use without the knowledge and consent of the court or parties.

### D.  Second Trial and Increased Sentence for Two of the Offenses

On remand, the State did not seek the death penalty, and the case was tried before a different judge. This time, the jury acquitted Mr. Bowser on all three conspiracy charges and convicted him of (1) voluntary manslaughter with use of a deadly weapon as a lesser-included offense for first-degree murder with use of a deadly weapon; (2) discharging a firearm out of a motor vehicle; and (3) discharging a firearm at or into a motor vehicle.

The statutory sentencing included: (1) a minimum of 1 year and a maximum of up to 10 years for voluntary manslaughter plus an equivalent consecutive term for use of a deadly weapon under NRS § 200.050, 200.080, 193.165; (2) a minimum of two years and a maximum of up to 15 years imprisonment for discharging a firearm out of a motor vehicle under NRS § 202.287; and (3) a minimum of one year and a maximum of up to six years for discharging a firearm at or into a vehicle, under NRS § 202.285.

The Prosecutor-Initiated Resentencing (PIR) recommended an aggregate sentence of 16 years and 4 months to 36 years based on imprisonment for (1) four to 10 years for voluntary manslaughter plus an equivalent consecutive term for use of a deadly weapon, for a total of eight to 20 years; (2) a consecutive term of six to 10 years for discharging a firearm out of a motor vehicle; and (3) a consecutive term of two years and four months to six years for discharging a firearm at or into a motor vehicle.

The State in turn requested an aggregate sentence of 16 years and four months to 41 years based on: (1) a sentence of four to 10 years for voluntary manslaughter plus an equivalent consecutive term of four to 10 years for use of a deadly weapon, for a total of eight to 20 years; (2) a consecutive term of six to 15 years for discharge of a firearm from a motor vehicle; and (3) a consecutive term of two years and four months to six years for discharge of a firearm at or into a motor vehicle.

The State argued the death of Mr. McCoy was "nothing less than a first-degree murder," and that the verdict for voluntary manslaughter represented a "compromised verdict." The State argued, for example, that the jury convicted Mr. Bowser of discharging the firearm instead of conspiracy to do so even though he was not the shooter. The defense, however, pointed out that the State had alleged "aiding and abetting" for each of the charges. The trial court acknowledged there was an aiding and abetting instruction and stated, "I understand he's not the shooter. There was no evidence he was the shooter. I'm not considering him the shooter."

The State urged the court to impose its recommended sentence because the crimes at issue were troubling in that they were random and without motive. The State further argued that Mr. Bowser was not under the influence of alcohol or drugs, his childhood "was great," he had no gang affiliation, he had no past or present mental or physical health problems, and despite trial evidence that he was "slow" and attended special education classes in school, he graduated from the 11th grade, graduated from trade school, and was a member of the Carpenter's Union. The State also explained that Mr. Bowser had a prior misdemeanor conviction for possession of a loaded shotgun that arose out of a traffic stop for reckless driving, during which police confiscated a loaded shotgun from the backseat of Bowser's motor vehicle.

Defense counsel argued the jury's verdict demonstrates it did not believe Mr. Bowser's confession and urged the court to impose concurrent counts, as was originally imposed by the first sentencing judge, because "[a]bsolutely nothing has changed from the first trial to the second trial," and "[t]here is not a single piece of new evidence." Without specification, the trial court replied, "[c]ouple things have changed," and the State noted that the verdict had changed. Defense counsel maintained, "there is not a single new fact that has come to light since the first trial that would warrant further aggravation." Counsel explained that the first trial was "completely different" because it was a death penalty trial, but that "[n]othing aggravating has been presented on top of the prior facts that warrants now going consecutive." Counsel directed the court's attention to the PIR, which included no infractions in prison, no new cases, no difficulties with correctional officers, no solitary confinement, *i.e.*, nothing one might expect to see over ten years of incarceration. Counsel asked the court "not to punish [Mr. Bowser] for having not been found guilty of murder."

Mr. McCoy's wife, daughter, and brother-in-law gave statements requesting a maximum sentence. Letters supporting a maximum sentence were submitted to the court for consideration.

> Before pronouncing Mr. Bowser's sentence, the trial court stated:
> So, Mr. Bowser, I hope that after going through all this process you truly understand the great loss that was caused by the choices you made and the actions you took that day. Mr. McCoy didn't have an opportunity to make choices in this situation, but you did and that's what brings us here.
>
> I do, I respect the jury verdict. I respect that their evaluation of the evidence and the verdict that they returned and certainly take that all into account as well as all the information in the PSI and what's presented here today by your counsel in evaluating what an appropriate sentence is in these circumstances. And I do consider, because it's 10 years down the road, the information we do have about what has happened in the time since.

The trial court then sentenced Mr. Bowser to an aggregate sentence of 12 to 30 years imprisonment as follows: (1) four to 10 years for voluntary manslaughter plus an equal and consecutive term of four to 10 years for the use of a deadly weapon; (2) a consecutive term of four to 10 years for discharging a firearm out of a motor vehicle; and (3) a concurrent term of two years and four months to six years for discharging a firearm at or into a motor vehicle.

> Following pronouncement of sentence, the trial court stated:
> I hope that your remorse and learning from this is sincere. I hope that you will take into account what's happened and do some good in the world whether in prison or

out. That will be up to the Parole Board when you get to that point.

And I certainly hope that the relatives of Mr. McCoy are able to continue to do their best to have some joy in spite of their great loss.

## III.   GOVERNING STANDARDS OF REVIEW

### A.  Antiterrorism and Effective Death Penalty Act (AEDPA)

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (first quoting Williams v. Taylor, 529 U.S. 362, 405–06 (2000), then citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

If no Supreme Court authority squarely addresses the question and provides a clear answer

to it at the time the state court adjudicated the petitioner's claim, then the state court's decision cannot contradict or unreasonably apply clearly established federal law, and §2254(d)(1) bars habeas corpus relief on the claim. See Carey v. Musladin, 549 U.S. 70, 76–77 (2006) (holding that if habeas relief depends upon the resolution of an open question in Supreme Court jurisprudence, habeas relief is precluded); Wright v. Van Patten, 552 U.S. 120, 125 (2008); see also Greene v. Fisher, 565 U.S. 34, 38 (2011).

### B. Standards for Evaluating Vindictive Sentencing in Violation of Due Process

#### 1. The Pearce Presumption and Reasonable Likelihood of Actual Vindictiveness

The Supreme Court has held due process of law "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." North Carolina v. Pearce, 395 U.S. 711, 725 (1969) overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). Mr. Pearce was convicted of one count of assault with intent to commit rape and originally sentenced to 12 to 15 years. See id. at 713. Following a successful appeal, Pearce was again convicted, and a different judge sentenced him to a term longer than that which was originally imposed. See id. The Supreme Court reversed Pearce's conviction because the State failed to offer any reason or justification for the longer sentence either "at the time the increased sentence was imposed," or "at any stage in the habeas corpus proceeding." Id. at 726.

In reaching its conclusion the Supreme Court explained that "[i]n order to assure the absence of [a retaliatory] motivation," "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." Id. The Court stated, "[t]hose reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," and "the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." Id. The Supreme Court later explained that when these conditions are not met, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by "objective information . . . justifying the increased sentence." See Smith, 490 U.S. at

798–99 (citing <u>Texas v. McCullough</u>, 475 U.S. 134, 142 (1986), and <u>United States v. Goodwin</u>, 457 U.S. 368, 374 (1982)).

In <u>Smith</u>, the Supreme Court explained that its "sweeping" holding in <u>Pearce</u> "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." <u>Id.</u> at 799 (citing <u>McCullough</u>, 475 U.S. at 138). The Court reiterated, "'the evil the Court sought to prevent' was not the imposition of 'enlarged sentences after a new trial' but 'vindictiveness of a sentencing judge.'" <u>Id.</u> (citations omitted). The Court held that "[b]ecause the <u>Pearce</u> presumption 'may operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct,'" application of the <u>Pearce</u> presumption is limited to "circumstances" where "there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." <u>Id.</u> (internal citation omitted). "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." <u>Id.</u> at 799–800 (citations omitted).

In <u>Smith</u>, the Supreme Court held no presumption of vindictiveness arose where the defendant's first sentence was based on a guilty plea and a second harsher sentence followed a trial with the same judge, because the judge became aware of new information during the trial that convinced the judge the original sentence was too lenient. <u>See</u> <u>Smith</u>, 490 U.S. at 795–97. The Court reasoned, "[e]ven when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial." <u>Id.</u> at 801. The Court thus concluded that in cases like that one, there were "enough justifications for a heavier second sentence that it cannot be said to be more likely than not that a judge who imposes one is motivated by vindictiveness." <u>Id.</u>

### 2.  The <u>**Pearce**</u> **Presumption and Different Second Sentencers**

The Supreme Court has ruled that the <u>Pearce</u> presumption is inapplicable in certain circumstances where the second sentencer is different than the first sentencer.

In <u>Colten v. Kentucky</u>, 407 U.S. 104 (1972), the Supreme Court held the <u>Pearce</u> presumption inapplicable where the second sentencer was a higher court in a two-tiered system for adjudicating less serious criminal cases. <u>See</u> <u>Colten</u>, 407 U.S. at 116–17. Mr. Colten was convicted

of misdemeanor disorderly conduct and fined $10. See id. at 107–08. Colten exercised his right under Kentucky's two-tiered system to a trial *de novo* in a court of general jurisdiction where he was again convicted but instead fined $50. See id. Colten claimed the increased punishment was impermissible under Pearce. See id. at 115. The Supreme Court disagreed, finding no inherent possibility of vindictiveness because, although the second court knew Colten's prior sentence was only $10, it (1) "was not the court with whose work Colten was sufficiently dissatisfied to seek a different result on appeal;" (2) was not "asked to do over what it thought it had already done correctly[;]" and (3) was not "asked to find error in another court's work." Id. at 117–18 n.14.

A year later, in Chaffin v. Stynchcombe, 412 U.S. 17 (1973), the Supreme Court held the Pearce presumption inapplicable to a harsher sentence imposed by a jury following retrial because that jury received identical instructions on the permissible range of punishment as the jury for the first trial and the parties agreed "the [second] jury was not aware of the length of the sentence meted out by the former jury." Chaffin, 412 U.S. at 18–20, 26–27. The Supreme Court reasoned that, in those circumstances, "the jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication." Id. at 26–28. The Court additionally pointed out that "[t]he jury without knowledge of a prior sentence is 'unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals.'" Id.

More than a decade later, in Texas v. McCullough, 475 U.S. 134 (1986), the Supreme Court declined to impose the Pearce presumption to a harsher sentence imposed by a judge following a retrial, where a jury previously imposed a lower sentence. See McCullough, 475 U.S. 134. McCullough was convicted of murder, and elected to be sentenced by the jury, which imposed a 20-year sentence. See id. at 135–36. The same trial judge thereafter granted McCullough's motion for new trial and McCullough was retried and convicted. See id. at 136. The second time, McCullough elected to have that same judge sentence him and the judge imposed a sentence of 50 years in prison. See id. The Supreme Court first reasoned that, "'unlike the judge who has been reversed,' the trial judge here had 'no motivation to engage in self-vindication,'" and the second trial came about because that same judge granted the motion for a new trial after agreeing that

prosecutorial misconduct required it. Id. at 138–39 (citing Chaffin, 412 U.S. at 27). Under those circumstances, the Court said there was "no justifiable concern about 'institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals.'" Id. at 139.

The Court in McCullough furthermore rejected application of the Pearce presumption "because different sentencers assessed the varying sentences that McCullough received," and "[i]n such circumstances, a sentence 'increase' cannot truly be said to have taken place." Id. at 140 (quoting Colten, 407 U.S. at 117 ("[i]t may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]," however, "it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty.")). Notably, the sentencing judge in that case provided an "on-the-record, wholly logical, nonvindictive reason for the [longer] sentence." Id. at 140–41, 144. In a footnote the Supreme Court explained that, although "some courts" concluded the presumption of vindictiveness applies even where different sentencing judges are involved, it had not previously addressed that issue:

> Because Pearce apparently involved different judges presiding over the two trials, some courts conclude by implication that the presumption of vindictiveness applies even where different sentencing judges are involved. See, e.g., United States v. Hawthorne, 532 F.2d 318, 323 (3d Cir. 1976). That fact, however, may not have been drawn to the Court's attention and does not appear anywhere in the Court's opinion in Pearce. Clearly the Court did not focus on it as a consideration for its holding. See Hardwick v. Doolittle, 558 F.2d 292, 299 (5th Cir. 1977). Subsequent opinions have also elucidated the basis for the Pearce presumption. We held in Chaffin, 412 U.S. 17, for instance, that the presumption derives from the judge's "personal stake in the prior conviction," id., at Chaffin, 412 U.S. 17, a statement clearly at odds with reading Pearce to answer the two-sentencer issue. We therefore decline to read Pearce as governing this issue. See also n. 4, *infra*.

McCullough, 475 U.S. at 140–41 n.3.

### 3. Applications of the Pearce Presumption

After McCullough, most of the federal circuits have held the Pearce presumption inapplicable where the second sentencer is a different judge in the same court as the first, and the record contains non-vindictive reasons for a more severe sentence. See United States v. Anderson, 440 F.3d 1013, 1016–17 (8th Cir. 2006) (joining other circuits interpreting Supreme Court cases as holding no presumption of vindictiveness arises when a different judge imposes a more severe

sentence during resentencing and the record contains non-vindictive reasons for the more severe sentence and finding the presumption inapplicable where second sentencer was a second judge who explained reasons for higher sentence unrelated to prior appeal) (citing Macomber v. Hannigan, 15 F.3d 155, 156–57 (10th Cir. 1994) (holding presumption inapplicable where different judge imposed more severe sentence and provided an "on-the-record, wholly logical, nonvindictive reason for the [harsher] sentence")); United States v. Newman, 6 F.3d 623, 630–31 (9th Cir. 1993) (holding presumption inapplicable where different judge imposed a "wholly logical" sentence and stated reasons for doing so); United States v. Cheek, 3 F.3d 1057, 1064 (7th Cir. 1993) (holding presumption inapplicable because the sentence was imposed by a different judge and no basis existed to conclude the judge was "more likely than not" motivated by vindictiveness as the judge identified sufficient justification for the heavier sentence); Rock v. Zimmerman, 959 F.2d 1237, 1257 (3d Cir. 1992), overruled on other grounds by Brecht v. Abrahamson, 507 U.S. 619 (1993) (holding "the Pearce presumption does not apply where the second sentence is imposed by a different sentencer and the record provides affirmative assurance that the harsher sentence reflects simply a fresh look at the facts and an independent exercise of discretion."); see also United States v. Rodriguez, 602 F.3d 346, 351–60 (5th Cir. 2010) (collecting cases and joining "seven sister circuits" that do not apply the presumption when different judges preside over the first and second sentencing, but not reaching the issue whether an explanation from the second sentencer is required because, *inter alia*, the second judge "stated more than sufficient reasons for the greater sentence."); but see United States v. Perez, 904 F.2d 142, 145–46 (2d Cir. 1990) (finding no realistic motive for vindictive sentencing where different judge resentenced defendant, without requiring an explanation for the longer sentence).

In the context of review under AEDPA, the Sixth Circuit held it is clearly established federal law under McCullough that the presumption is inapplicable where a different judge imposes a harsher sentence than the first sentencing judge, "absent other circumstances demonstrating a need to guard against vindictiveness." Goodell v. Williams, 643 F.3d 490, 499–500 (6th Cir. 2011); see also Anderson, 440 F.3d at 1016, 1016–17 (declining to infer "institutional hostility toward the exercise of appellate rights or a collusive arrangement between judges to have

one exact vindication for another" where there was "no evidence to suggest such a lack of professionalism among judges" and the sentencing judge "came to a new point of view and a new approach to the exercise of its discretion . . . ."). Significantly, the second judge in Goodell explained the basis for imposing a longer sentence than was imposed by the original judge. See id. The Circuit in Goodell concluded the state appellate court's failure to apply the presumption was not contrary to or an unreasonable application of Supreme Court authority. See id.; but see Parmelee v. Clarke, 251 F. App'x 450, 451–52 (9th Cir. 2007) (unpublished) ("[t]here is no clearly established Supreme Court precedent that gives rise to a presumption of vindictiveness when a different judge imposes the second, more severe, sentence.").

## IV. DISCUSSION

### A. The Nevada Supreme Court's *En Banc* Determination

In an *en banc* decision, the NSC rejected Mr. Bowser's claim that the trial court's sentencing was presumptively vindictive for failing to state reasons for the increased sentences for the discharge-of-a-firearm convictions:

Appellant Terrence Bowser successfully appealed his first conviction and received a new trial and sentencing hearing before a new district court judge. After the second trial, the judge imposed a longer sentence on some of the counts than had the original trial judge, which Bowser claims is a due process violation. In Holbrook v. State, 90 Nev. 95, 98 (1974), we recognized that a presumption of vindictiveness arises where a judge imposes a more severe sentence after a new trial. The sole issue before us is whether this presumption of vindictiveness applies here, such that the imposition of this new sentence violated Bowser's due process rights. We hold that the presumption of vindictiveness does not apply when a different judge imposed the more severe sentence. Accordingly, we affirm the judgment of conviction.

*FACTS AND PROCEDURAL HISTORY*

Following his first trial, Bowser was convicted of six counts: first-degree murder with the use of a deadly weapon (count 2), discharging a firearm out of a motor vehicle (count 4), discharging a firearm at or into a structure or motor vehicle (count 6), and three additional conspiracy charges. Bowser was sentenced to life in prison with the possibility of parole after 40 years. Specifically, the district court sentenced him to two consecutive terms of life with the possibility of parole after 20 years on the murder charge (count 2), 24 to 60 months on count 4, and 12 to 60 months on count 6, to run concurrent.

Bowser appealed, and we reversed the judgment of conviction and remanded for a new trial because the bailiff improperly presented evidence to the jury. On remand, Bowser was tried again on the same 6 counts, but with a different district court judge presiding. This time, he was convicted of voluntary manslaughter with a deadly weapon (count 2) instead of first-degree murder. He was also convicted of the two discharging-a-firearm charges (counts 4 and 6), but was acquitted of the three conspiracy charges. The district court conducting the retrial sentenced him to

2 consecutive terms of 48 to 120 months on count 2, 48 to 120 months on count 4 to run consecutive to count 2, and 28 to 72 months on count 6 to run concurrent to count 4. His new total sentence was 30 years in prison with a minimum of 12 years for parole eligibility. In imposing the sentences, the district court stated that it took into account the evidence at trial, the jury verdict, the information in the presentence investigation report, the defense's mitigation arguments, and all of the information about what had happened since the previous trial. The district court provided no other explanation for the new sentence.

Bowser appealed from the newly entered judgment of conviction, arguing that the sentences imposed for the discharging-a-firearm counts violated due process because they were harsher than the original sentences. The case was transferred to the court of appeals. In a split decision, the court of appeals affirmed Bowser's sentence. Bowser petitioned for review under NRAP 40B, which we granted.

*DISCUSSION*

Though district courts generally have significant discretion in sentencing, Chavez v. State, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009), their sentencing decision must not be influenced by vindictiveness against the defendant, North Carolina v. Pearce, 395 U.S. 711, 723–26 (1969), overruled in part by Alabama v. Smith, 490 U.S. 794, 798 (1989). A harsher sentence after a defendant successfully appeals his conviction presents a concern that the increase in sentence was motivated by vindictiveness on the part of the sentencing judge for the defendant's exercise of his right to appeal.

> [FN 2] An increase in sentence following a new trial does not violate double jeopardy principles. See Pearce, 395 U.S. at 720–21 (explaining that double jeopardy is not implicated where a defendant successfully appeals his conviction, has a new trial, and receives a higher sentence because "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean").

In Pearce, the United States Supreme Court explained, "Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. at 725. And, because "the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." Id. To ensure the absence of vindictiveness as the reason for the harsher sentence, the Supreme Court announced in Pearce a presumption of vindictiveness that applies whenever a judge imposes a more severe sentence after a new trial. Id. at 726; see also Wasman v. United States, 468 U.S. 559, 564–65 (1984). The presumption may only be overcome if the reasons for the more severe sentence affirmatively appear in the record and are "based upon objective information concerning identifiable conduct on the part of the defendant." Pearce, 395 U.S. at 726. In Holbrook, we applied this presumption of vindictiveness to conclude that a harsher sentence could not be imposed following a new trial where the record did not show identifiable conduct by the defendant that would justify a more severe sentence. 90 Nev. at 98, 518 P.2d at 1244.

Bowser, relying on Holbrook, contends that the district court's failure to justify the harsher sentence on the record violated his due process rights. The State, on the other hand, urges this court to revisit and limit the holding of Holbrook in light of more recent Supreme Court jurisprudence clarifying the presumption of vindictiveness.

- 13 -

Before addressing these arguments, however, we must first determine whether the sentence Bowser received on retrial is harsher than his original sentence, so as to trigger due process concerns. Bowser's aggregate total sentence on retrial decreased from the original aggregate sentence, but the individual sentences on the discharging-a-firearm counts increased in length and were also changed to run consecutive rather than concurrent. Thus, whether his sentence was increased depends on whether we look at the aggregate sentence or the individual sentence on each count. The Supreme Court's jurisprudence on the presumption of vindictiveness does not direct a particular approach for determining whether the new sentence is greater.

We recognize that a majority of courts apply an aggregate approach to determine whether the new sentence is more severe than the original sentence. See People v. Johnson, 363 P.3d 169, 177–78 (Colo. 2015); State v. Hudson, 748 S.E.2d 910, 911 (Ga. 2013). Under the aggregate approach, if the new aggregate total sentence is not greater than the original aggregate total sentence, then no presumption of vindictiveness applies. The rationale for this approach is that judges, in imposing sentences in cases where multiple counts stem from a single course of conduct, "typically craft sentences on the various counts as part of an overall sentencing scheme," but when "that scheme unravels due to elimination of some of the original counts, the judge should be given a wide berth to fashion a new sentence that accurately reflects the gravity of the crimes for which the defendant is being resentenced." Hudson, 748 S.E.2d at 913.

Though we appreciate the logic of the aggregate approach, we choose to adopt the count-by-count method, which means looking at each individual count to determine whether the new sentence on that count is greater in length than the original sentence or has been run consecutive whereas the original sentence was concurrent. This is consistent with our approach in determining whether a resentencing violates double jeopardy principles. See Wilson v. State, 123 Nev. 587, 591–93, 170 P.3d 975, 977–79 (2007) (rejecting the aggregate sentencing analysis used in federal courts, and instead assessing the sentence on each count separately). Moreover, we believe that this count-by-count approach best effectuates the objectives of the vindictiveness presumption: to deter actual vindictiveness by a sentencing authority and to "avoid a chilling effect on defendants exercising their right to appeal." Johnson, 363 P.3d at 181. To illustrate why, we need only consider the sentences in this case.

Bowser was charged with open murder in count 2. Following his first trial, he was convicted on count 2 of first-degree murder with the use of a deadly weapon, a category A felony, for which he was sentenced to a total of life with parole eligibility after 40 years. After his second trial, he was convicted on count 2 of the lesser offense of voluntary manslaughter with the use of a deadly weapon, a category B felony, for which he received the maximum sentence allowable by statute, 20 years with parole eligibility after 8 years. His new aggregate sentence was 30 years with parole eligibility after 12 years. Thus, under the aggregate approach, the presumption of vindictiveness would not apply because his new aggregate was not more severe than the original. But, given that his original sentence on count 2 alone was life in prison, it was not possible for his new aggregate sentence to be harsher, even if he had received consecutive maximum sentences on all counts. Yet, this does not preclude the possibility of judicial vindictiveness, meaning such vindictiveness could evade review under the aggregate approach. Thus, we apply the count-by-count method. Because Bowser's sentence on each of the discharging-a-firearm counts (counts 4 and 6) increased and the new sentence on count 4 was run consecutive whereas originally it was concurrent, we conclude that his new sentence was more severe than his original sentence for due process purposes.

Having concluded that Bowser's sentence after retrial was more severe, we now turn to whether the presumption of vindictiveness applies here where there were two different sentencing judges. Since Pearce was decided, the Supreme Court has made clear that the presumption "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." Texas v. McCullough, 475 U.S. 134, 138 (1986). The Supreme Court explained in McCullough that "the evil the [Pearce] Court sought to prevent" was not the imposition of "enlarged sentences after a new trial," but rather, the "vindictiveness of a sentencing judge." Id. Thus, the presumption only applies when there is a "reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." Alabama v. Smith, 490 U.S. 794, 799 (1989) (internal quotation marks and citation omitted). "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." Id. at 799–800.

The Supreme Court has declined to apply the Pearce presumption where the sentences have not been imposed by the same judge or jury. For example, in Colten v. Kentucky, the Court refused to apply the presumption to a higher sentence arising from Kentucky's two-tier system, which allowed the defendant who was convicted and sentenced in an inferior court to appeal and receive a *de novo* trial in a superior court. 407 U.S. 104, 116–17 (1972). The Court explained that there was no inherent vindictiveness stemming from a higher sentence imposed by a different court because the superior court was not being "asked to do over what it thought it had already done correctly." Id. The Court recognized that when there are different sentencers involved, "[it] may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty." Id. at 117.

Likewise, in Chaffin v. Stynchcombe, the Court declined to apply the presumption of vindictiveness to a higher sentence when it was imposed on retrial by a different jury, noting that "the jury, unlike [a] judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication." 412 U.S. 17, 26–28 (1973). And, in McCullough, the Court held the presumption to be inapplicable where a judge imposed a higher sentence on retrial than was imposed by a jury in the first trial, because it would be too speculative given that "different sentencers assessed the varying sentences," and thus, a "sentence 'increase' cannot truly be said to have taken place." 475 U.S. at 139–40. Furthermore, though McCullough involved a jury imposing the first sentence and a judge imposing the second, the Court strongly indicated that the same logic would apply where two different judges imposed the sentences. Id. at 140–41 n.3 (noting that while it appeared that Pearce involved two different judges, the Pearce decision did not focus on that and the Court declined to read Pearce as governing where different sentencing judges are involved).

Based on Pearce's progeny and the concerns underlying the presumption of vindictiveness, we conclude that the presumption does not apply where a different judge imposes a higher sentence after retrial than the first judge. Under these circumstances, the likelihood of vindictiveness is de minimis, as there is no reason to presume that the second judge had a personal stake in the outcome of the first trial or sentencing, or a motivation to retaliate for a successful appeal.

> [FN 3] Though the dissent places heavy emphasis on the possibility that a second judge might be infected by institutional prejudices when resentencing a defendant after a successful appeal, we view such a position as too speculative to present a likelihood of vindictiveness. See United States v. Anderson, 440 F.3d 1016, 1016–17 (8th Cir. 2006) ("To apply a presumption of

vindictiveness in such circumstances—where the second sentencer had no personal stake in the prior proceedings—would require an inference of institutionalized hostility toward the exercise of appellate rights or a collusive arrangement between judges to have one exact vindication for another. There is no evidence to suggest such a lack of professionalism among judges, and we are unwilling to make such inferences on the present facts.").

We recognize that judges generally have broad discretion in sentencing, and different sentences imposed by different judges merely reflect this discretion. Thus, because a different judge presided over Bowser's second trial and sentencing, due process does not require a presumption of vindictiveness.

> [FN 4] Bowser does not argue that the sentence on retrial was the result of actual vindictiveness or reliance on impalpable or highly suspect evidence. See Alabama, 490 U.S. at 801–03 (providing that where the presumption of vindictiveness does not apply, the burden is on the defendant to prove actual vindictiveness); Silks v. State, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976) (refraining from interfering with a sentence within statutory guidelines where the defendant does not demonstrate prejudice from the district court's reliance on impalpable or highly suspect evidence).

Accordingly, we affirm the judgment of conviction.

Bowser v. State, 135 Nev. 118, 119–24, 441 P.3d 540, 541–44 (2019).

## B. The Concurrence and Dissent in Part from the NSC's *En Banc* Determination

Justice Stiglich of the NSC concurred in part and dissented in part:

I concur with the majority's adoption of a count-by-count method to determine whether a subsequent sentence is harsher than the sentence originally imposed. And therefore I agree with the majority that Bowser'[s] second sentence "was more severe than his original sentence for due process purposes." Majority opinion *ante* at 7. However, I disagree with the majority's adoption of a bright line rule that a presumption of vindictiveness "does not apply where a different judge imposes a higher sentence after retrial than the first judge," Majority opinion *ante* at 9, and thus I respectfully dissent.

As noted by the majority, it is not the concern of an enhanced sentence on remand that requires the presumption of vindictiveness; it is the concern that a defendant will be punished for exercising the right to appeal or collateral review and that the fear of such punishment will deter defendants from lawfully attacking a conviction. See Alabama v. Smith, 490 U.S. 794, 798–99 (1989); North Carolina v. Pearce, 395 U.S. 711, 724–25 (1969), overruled in part by Smith, 490 U.S. 794. "[D]ue process . . . requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." Pearce, 395 U.S. at 725. Thus, the Supreme Court adopted a prophylactic rule for "whenever a judge imposes a more severe sentence upon a defendant after a new trial"—the sentencing judge must articulate the reasons for the higher sentence. Id. at 726. Absent such articulation, a rebuttable presumption of vindictiveness applies. Smith, 490 U.S. at 798–99.

While the Supreme Court has subsequently clarified that the presumption of vindictiveness will not apply in every case where a defendant receives a harsher sentence after retrial, see Majority opinion *ante* at 7–9, it also has not unequivocally decided whether the presumption should apply when two different judges in the same court issue the sentences, see Texas v. McCullough, 475 U.S. 134, 140 n.3 (1986).

[FN 1] Even had the Supreme Court ruled on this issue, concluding that the presumption does not apply where there are two different sentencing judges within the same court, that fact would not preclude this court from concluding that the Nevada Constitution requires otherwise. See Wilson v. State, 123 Nev. 587, 595, 170 P.3d 975, 980 (2007) ("[S]tates are free to provide additional constitutional protections beyond those provided by the United States Constitution.").

And I disagree with the majority that a different sentencing judge creates merely a "*de minimis*" likelihood of vindictiveness. Majority opinion *ante* at 9.

As the Supreme Court of Oregon noted, "[t]he fact that a different judge imposes an increased sentence does not eliminate [vindictiveness] concerns or the possibility that institutional prejudices might infect a trial judge's resentencing of a defendant after a successful appeal." State v. Sierra, 399 P.3d 987, 1000 (Or. 2017) (internal quotation marks omitted). Indeed, the Supreme Court appears to have recognized the possibility of institutional concerns in Chaffin v. Stynchcombe, 412 U.S. 17, 27 (1973), when it remarked that a "jury is unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals." While a jury is not likely to be sensitive to the institutional pressures of disincentivizing meritless appeals, "another judge operating within the same system as the original judge likely will have that knowledge and understandably could be sensitive to those interests." Sierra, 399 P.3d at 1000.

With the possibility that institutional concerns might affect judges operating in the same court and with the underlying objective of Pearce being "to assure the absence of [vindictive sentencing] motivation," 395 U.S. at 726, I cannot agree with the majority's bright line rule that the presence of a different judge eliminates the presumption of vindictiveness. I would instead adopt a rule that the presumption of vindictiveness is inapplicable where there are different sentencing judges only if the second sentencer states objective, nonvindictive reasons for imposing the greater sentence. This requirement has been adopted by a number of federal circuit courts and the Supreme Court of Oregon. See United States v. Rodriguez, 602 F.3d 346, 358–59 (5th Cir. 2010) (collecting cases); Sierra, 399 P.3d at 999–1000; cf. McCullough, 475 U.S. at 140 ("[T]he second sentencer provide[d] an on-the-record, wholly logical, nonvindictive reason for the sentence. We read *Pearce* to require no more[,] particularly since trial judges must be accorded broad discretion in sentencing."). Moreover, the added condition I would impose is consistent with our holding in Holbrook, which states that when a harsher sentence "is imposed after a new trial the reasons for doing so must affirmatively appear." Holbrook v. State, 90 Nev. 95, 98, 518 P.2d 1242, 1244 (1974).

Creating a record of a logical, nonvindictive reason for imposing a harsher sentence does not do violence to Holbrook, Pearce, or Pearce's progeny. Instead, it helps to ensure that a defendant is not punished at resentencing after exercising the right to appeal or collateral review, a goal squarely in line with the above-mentioned precedent. Accordingly, I would apply the presumption of vindictiveness to this matter, as the record contains no objective, nonvindictive justification for the harsher sentences, and modify the sentences for counts 4 and 6 to the terms originally imposed, pursuant to Holbrook.

Respectfully, I dissent.

Id. at 124–26, 441 P.3d at 545–46.

**C. Analysis**

- 17 -

**1. The NSC reasonably concluded the second sentences for discharging-a-firearm offenses are harsher.**

The NSC's determination that Mr. Bowser's second sentences for the two discharging-a-firearm offenses is lengthier than the initial sentences for those crimes is neither contrary to nor constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court and is not based on an unreasonable determination of fact considering the evidence presented in the state court proceedings.

The NSC reasonably concluded the Supreme Court has not directed a particular approach for determining whether a sentence is greater than the original sentence for purposes of determining whether to apply the Pearce presumption of vindictiveness. In Pearce, the Supreme Court considered a harsher sentence for one count of conviction, and in Smith, the Supreme Court considered the harsher sentence for one conviction out of three. See 395 U.S. at 713; 490 U.S. at 795–97. The Sixth Circuit recently held the use of the aggregate approach, rather than the count-by-count approach, is neither contrary to, nor an unreasonable application of, Supreme Court precedent. See Craycraft v. Cook, 634 F. App'x 490, 493–94 (6th Cir. 2015) (unpublished) (collecting cases and stating all federal circuits have adopted the aggregate sentence method and none follow a count-by-count method); see also United States v. Bay, 820 F.2d 1511, 1513 (9th Cir. 1987) (adopting the aggregate approach for federal crimes).

Because the Supreme Court has not clearly established that courts must use only the aggregate sentence before determining whether the Pearce presumption is applicable, the NSC's adoption of the count-by-count method is neither contrary to, nor an unreasonable application of, Supreme Court authority, and its conclusion that Mr. Bowser's sentence is lengthier than the original sentence does not constitute an unreasonable determination of the facts.

**2. Determination that Pearce Presumption is Inapplicable to Different Judge**

However, the NSC's categorical determination that the Pearce presumption of vindictiveness does not apply where a different judge imposes a lengthier sentence after appeal, remand, and retrial, constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1).

First, as Justice Stiglich explained in the dissent from the NSC's *en banc* determination,

the Supreme Court has never unequivocally decided whether the presumption should apply when two different judges in the same court issue the sentences. See *supra* at p. 17 (citing McCullough, 475 U.S. at 138 & n.3); see also *supra* at p. 10 (quoting McCullough's footnote stating that, although Pearce involved two different judges, the Pearce decision did not focus on that, and the Supreme Court declined to read Pearce as governing different sentencing judges). "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the *dicta*, of this Court's decisions as of the time of the relevant state-court decision.'" Lockyer, 538 U.S. at 71 (quoting Williams, 529 U.S. at 412).

Second, as Justice Stiglich also pointed out, the NSC unreasonably applied clearly established federal law by categorically determining the "likelihood" of vindictiveness was "*de minimis*." See *supra* at pp. 16–17. The NSC explained that its conclusion was based on its reasoning that, "there is no reason to presume that the second judge had a personal stake in the outcome of the first trial or sentencing or a motivation to retaliate for a successful appeal." See *supra* at pp. 16–17. That determination is an unreasonable application of the Supreme Court's directive in Smith, where the Supreme Court clarified the presumption applies to "circumstances" where "there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." Smith, 490 U.S. at 799. It is an objectively unreasonable application of Smith to assume, without applying Smith's "reasonable likelihood" test, that all second sentencing judges will never have a stake in the outcome of the second sentence, never harbor any vindictiveness or motive to retaliate, and never impose a harsher sentence out of "concern about 'institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals.'" Chaffin, 412 U.S. at 26–28.

Third, the NSC's categorical determination constitutes an unreasonable application of Pearce and its progeny because the Supreme Court has recognized that there are circumstances applicable to a second sentencing judge that may contribute to a determination that there is a reasonable likelihood of actual vindictiveness. In Colton, one of the reasons why the presumption was not applied was that the second sentencer was not "asked to find error in another court's work." Colton, 407 U.S. at 117–18 n.14. As Justice Stiglich of the NSC explained in the dissent,

the Supreme Court in Chafin pointed out that a second sentencer who has no knowledge of a prior sentence—unlike a second judge who will undoubtedly be aware of the first sentence—is "'unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals.'" Chaffin, 412 U.S. at 26–28. Likewise, in McCullough, the Supreme Court acknowledged there was, in that case, "no justifiable concern about 'institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals'" because the second sentencer (a judge) provided an "on-the-record, wholly logical, nonvindictive reason for the [longer] sentence." McCullough, 475 U.S. at 139.

Finally, the NSC's determination constitutes an unreasonable application of Pearce because it eliminates the requirement in Pearce and its progeny that "[i]n order to assure the absence of [a retaliatory] motivation," "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." Pearce, 395 U.S. at 726. The NSC furthermore contravened the Supreme Court's directive that "[t]hose reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," and "the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." Id.

Given the underlying objective of Pearce is "to assure the absence of retaliatory motivation," Pearce, 395 U.S. at 726, and the Supreme Court's recognition that institutional concerns might affect judges operating in the same court, the NSC's categorical determination that there is no presumption of vindictiveness where a second sentencer is a different judge constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

### 3. *De Novo* Review of Due Process Claim

Because the NSC unreasonably applied clearly established federal law to Mr. Bowser's due process claim, this Court evaluates the claim *de no*vo. See Hurles v. Ryan, 752 F.3d 768, 778 (9th Cir. 2014). The Court finds that, under the circumstances, "there is a 'reasonable likelihood'

that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." Smith, 490 U.S. at 799.

First, the trial court's unreasonable failure to articulate its reasons for imposing a lengthier sentence than the first judge indicates that there is a reasonable likelihood the sentence is the product of actual vindictiveness under the circumstances. As stated in Pearce, "[i]n order to assure the absence of [a retaliatory] motivation," "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." Pearce, 395 U.S. at 726. The Supreme Court furthermore directed that "[t]hose reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," and "the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." Id. Defense counsel argued that there was no evidence presented in the second trial that was not presented at the first trial, and pointed out that, in the first trial, the State sought the death penalty but did not do so in the second trial. The second sentencing judge stated that "a few things" were different, and the State interjected that the verdict was different. However, the judge did not articulate the nature of the differences or affirmatively state that the judge relied upon differences to impose a lengthier sentence for the discharge-of-a firearm offenses. The second sentencing judge's failure to articulate "on-the-record, wholly logical, nonvindictive reasons" for the longer sentences supports a reasonable likelihood the increase in sentence was the product of actual vindictiveness on the part of the second judge. See Pearce, 395 U.S. at 726; McCullough, 475 U.S. at 140–41, 144; see also supra at pp. 10–12.

Second, there is a reasonable likelihood that Mr. Bowser's lengthier sentences were the product of actual vindictiveness because his conduct after the initial sentencing was exemplary. Defense counsel pointed out that, since the initial trial and sentencing, Mr. Bowser incurred no infractions in prison, no new cases, no difficulties with correctional officers, no solitary confinement, i.e., nothing one might expect to see during his incarceration for 10 years. There is no "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," that justifies the increased sentences for the

discharge-of-firearm convictions. See Pearce, 395 U.S. at 726.

Third, the conclusion that the second judge's sentence was the product of actual vindictiveness is supported by the fact that the second trial resulted in fewer convictions because the jury acquitted Mr. Bowser for all conspiracy charges, and the second jury returned a verdict for the lesser offense of voluntary manslaughter, rather than first-degree murder, as was the case in the first trial.

Finally, this was a highly publicized case in which the State suffered multiple public losses. The State initially sought the death penalty but lost. Then the State lost the appeal. Then the State's conspiracy case imploded during the second trial. And finally, the State was unsuccessful in obtaining a first-degree murder conviction during the second trial. Moreover, the court's failure to supervise its staff, *i.e.*, the bailiff who presented evidence to the first jury during the first trial, resulted in a reversal and remand for a second trial, which could result in a loss of confidence in the state court. Finally, despite the second jury's verdict, the State argued at sentencing that this was "nothing less than a first-degree murder" case. The second judge here imposed the maximum sentence allowable for the involuntary manslaughter conviction. The second judge then imposed lengthier sentences for the discharge-of-a firearm offenses, than the initial sentencing judge did. And, unlike the first judge, the second judge imposed a consecutive sentence for one of the discharging-a-firearm offenses. Under these circumstances, institutional interests appear to account for the lengthier sentences and contribute to this Court's finding that there is a reasonable likelihood of actual vindictiveness on the part of the second sentencing judge.

The State argues the second sentencing judge received evidence and argument that the first sentencing judge did not receive: (1) 16 letters of support for the victim; (2) in-court statements of Mr. McCoy's wife, daughter, and brother in law; (3) the State's argument that, "someone who goes out with the specific intention to shoot random people for fun should never be released from prison," and the maximum allowable sentence was the only way to protect the community; and (4) the second trial court "respected" the jury's verdict and its evaluation of the evidence. None of that is "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Pearce, 395 U.S. at 726. Moreover, the

second sentencing judge did not state reliance on that evidence as justification for imposing lengthier sentences for the discharge-of-firearms offenses; to the contrary, the second sentencing judge stated she did not consider Mr. Bowser the shooter. In addition, the letters, victim's statements, and State's argument were directed at the court's decision whether to impose the maximum penalty for the voluntary manslaughter conviction. The Court thus finds that the State fails to overcome the Pearce presumption because it has not established objective information concerning identifiable conduct on the part of Mr. Bowser occurring after the time of the original sentencing proceeding justifying the increased sentence. See Smith, 490 U.S. at 798–99 (citing McCullough, 475 U.S. at 142, and Goodwin, 457 U.S. at 374).

The Court concludes that the institutional circumstances, together with the trial judge's failure to articulate any reasons for the lengthier sentences in the face of evidence of Mr. Bowser's improved conduct following the initial sentencing, acquittal for the conspiracy charges, and a conviction for a lesser included offense to first degree murder, contribute to a conclusion that there is a reasonable likelihood of actual vindictiveness.

For the foregoing reasons, the Court will grant the writ and vacate the sentences imposed for (1) discharging a firearm out of a motor vehicle and (2) discharging a firearm at or into a motor vehicle. The Court will furthermore direct the state district court to enter an amended judgment imposing a sentence of (1) two to five years for discharge of a firearm out of a motor vehicle; and (2) one to five years for discharging a firearm at or into a motor vehicle, each to run concurrent with each other and concurrent with the sentence for the conviction for voluntary manslaughter with use of a deadly weapon. See, e.g., Pearce, 395 U.S. at 726 (affirming the Fourth Circuit's affirmance of the United States District Court's order releasing petitioner because he served the maximum term imposed on him at his original trial notwithstanding that on retrial, after successful post-conviction attack, he was sentenced to a longer term); see also Pearce v. State of N.C., 397 F.2d 253, 253 (4th Cir. 1968).

V.    CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1) is conditionally granted. Petitioner Terrence Bowser's

judgment for (1) discharging a firearm out of a motor vehicle; and (2) discharging a firearm at or into a motor vehicle, contained in the judgment filed on August 31, 2015, in Case No. C211162-2 in the Eighth Judicial District, in and for Clark County, Nevada, is hereby vacated. Within 60 days[3] of the later of (1) the conclusion of any proceedings seeking appellate or certiorari review of this Court's judgment, if affirmed; or (2) the expiration for seeking such appeal or review, the state district court in the Eighth Judicial District, in and for Clark County, Nevada, is directed to enter an amended judgment in Case No. C211162-2, imposing sentences of (1) two to five years for the conviction for discharge of a firearm out of a motor vehicle; and (2) one to five years for the conviction for discharging a firearm at or into a motor vehicle, each to run concurrent with each other and each to run concurrent with the sentence imposed for the conviction for involuntary manslaughter with use of a deadly weapon.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied as unnecessary.

**IT IS FURTHER ORDERED** that the Clerk of Court (1) enter judgment accordingly; (2) provide a copy of this order and the judgment to the Clerk of the Eighth Judicial District Court for the State of Nevada in and for Clark County in connection with that court's case number No. C211162-2; and (3) close this case.

**DATED:** January 30, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

---

[3] Reasonable requests for modification of this time may be made by either party.

- 24 -